IRVING TABLEPORTER, Plaintiff, *v.* MORRIS URIST, Defendant.

Municipal Court of New York, Borough of Bronx, Second District,
November 27, 1935.

*Lesser & Lesser* [*Samuel Lesser* of counsel], for the plaintiff.

*Morris Dube* [*Philip Adelman* of counsel], for the defendant.

SULLIVAN (DANIEL V.), J. This action is to recover $1,000 damages for breach of a written contract whereby the parties were to organize a corporation for the sale of beer and to share equally in its earnings. The action was tried before the court and a jury on November 13, 14 and 15, 1935. The trial was protracted and bitterly contested. After a comparatively short deliberation the jury returned a verdict for the defendant. Counsel for the plaintiff moved to set it aside upon the ground that it was against the weight of the evidence and contrary to the evidence and the law. There being a sharp issue of fact, the court denied that motion. Thereupon counsel for the plaintiff in open court, in the presence of his adversary, the jury, the litigants and other persons then in the court room, requested the court to conduct an investigation upon information furnished him by the plaintiff after the jury had entered the jury room. This was the first intimation the court had that there was anything suspicious about the case. The court directed every one to remain in the court room, conferred privately with counsel in the case and then concluded there should be an inquiry.

The first interrogated was a man who had been seen by the plaintiff and his wife sitting upon the row of seats outside the rail,

nearest the jury box with the defendant and his wife during the afternoon of the second day of the trial and who returned the following day. Counsel for the plaintiff had stated the information he received was that this man was the son of one of the jurors and that the plaintiff and his wife had seen him endeavoring by the movement of his lips to convey a message to the juror while the court was delivering its charge. The man admitted he was the son of the second juror and resided with him. When asked to account for his presence in the court room that day, he said he called to take his father home. When asked to explain why he had attended the previous day, he stated that he just happened to be in the court room, found a seat alongside the defendant, asked him for a job, and that the defendant told him he was unable to employ him. The defendant was then asked whether he knew the juror's son and said he had never seen him before November 14, 1935. He admitted that the son asked him for a job and that he returned the final day of the trial and again sat with him. The juror stated that defendant was a stranger to him and that he had not discussed the case with his son the night before or at any time, and did not know that he had sought employment by the defendant. Upon learning these facts the plaintiff's counsel again moved to set aside the verdict. The matter is now formally before the court upon the motion of the plaintiff.

Like their testimony upon the trial the affidavits of the interested parties are conflicting. It is hard to determine where the truth lies and whether the facts have been fully disclosed. Among the affidavits submitted in opposition are those of the juror and his son. Each disclaims any impropriety. Each asks for a denial of the motion. An examination of the authorities shows there has been no situation previously before the courts quite comparable to this one.

Counsel for the defendant contends there is no concrete evidence of misconduct and that the plaintiff, having waited until the jury rendered its verdict, is deemed to have waived any irregularity. He argues that the plaintiff speculated upon the result, and having lost should not now be permitted to impeach the verdict. The affidavits of the plaintiff raise a doubt of prior knowledge and the opportunity of communicating the information to the court itself sooner than was done.

What occurred in this case, as briefly outlined above, seems to present something more serious than an impropriety or an irregularity. It is considered as questionable conduct, at least, on the part of the defendant and the juror's son. The court cannot ignore the undeniable facts that the juror's son sat with the defendant dur-

ing an afternoon, asked for employment, which he claims was refused, and yet he returned the following morning and again sat with the defendant in a prominent place in the court room where the jury could observe them together. The interrogation that took place after the verdict was in the presence of all the jurors in the case. The other jurors remained silent. None of them was in any way suspected. But we have not yet reached the day of five-sixths verdicts. A jury must still function as a unit. Their deliberations must be guarded against any extraneous influence that might affect the result. In a recent case the court said: " Every litigant is entitled to a fair and impartial trial before an unprejudiced and unbiased jury. A party should not be compelled to submit his rights to a tribunal whose honesty and impartiality can be questioned. The triers of the facts should be beyond suspicion. Otherwise the administration of justice will quickly fall into disrepute." (*Payne* v. *Burke*, 236 App. Div. 527.) To the same effect is *Matter of Vanderbilt* (127 App. Div. 408), where the court also said: " We cannot determine with certainty, nor is it necessary that we should, that the acts complained of did influence the verdict. It is sufficient for reversal if they are likely to do so."

This language was reiterated by the Appellate Division in this department in setting aside a verdict that was questioned after its rendition. (*Johnson* v. *Riter-Conley Manufacturing Co.*, 149 App. Div. 543.)

A party should not be held to a too strict waiver of suspected misconduct. (*Hanrahan* v. *Ayres*, 10 Misc. 435.)

The right to an unimpeachable trial is a sacred one. An impairment of that right is regarded as a grievous offense. This court refuses to condone what has occurred in this case. Upon the investigation had, the court is impelled to set aside the verdict. The motion is granted. Order signed.