UNITED STATES of America, Appellee,

v.

John Archer MALLOY, Appellant.

No. 84–6316.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 9, 1985.
Decided March 27, 1985.

J. Lloyd Snook, III, Charlottesville, Va. (Paxson, Smith, Gilliam & Scott, Charlottesville, Va., on brief), for appellant.

William G. Otis, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before HALL and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge.

John Archie Malloy, who was convicted of armed bank robbery under 18 U.S.C. § 2113(a) and (d), appeals from the district court's order, denying his motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. We affirm.

## I.

On January 3, 1975, the Alexandria National Bank in Alexandria, Virginia, was robbed by four black males. William C. Webster was arrested that same day and charged with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). Malloy was indicted under the same sections on February 5, 1975.

Webster was tried and convicted in a jury trial held in district court before the Honorable Robert Merhige on February 26 and 27, 1975. Malloy was tried and con-

victed by a jury on April 3, 1975, with the Honorable Richard B. Kellam presiding. One juror, Alva Gossman, served on both juries.

At the beginning of each *voir dire,* the district judge read the indictments to the venire, describing the offenses charged and using virtually identical language.[1] At Malloy's trial, the venire, including Gossman, was asked, "Do any members of the jury know anything about the facts concerning this case? ... Have you formed or expressed any opinions concerning the matters in issue?" Gossman did not answer.

Malloy unsuccessfully appealed his conviction to this Court.[2] Twice thereafter, he launched collateral attacks ·on his conviction, neither of which succeeded.[3]

On December 2, 1981, nearly seven years after his trial and conviction, Malloy moved *pro se* to vacate his conviction and sentence under 28 U.S.C. § 2255, alleging for the first time that Gossman, a juror at his trial, had previously served as a juror at the trial of Webster, and that Gossman had failed to reveal this fact on *voir dire.*[4] Malloy contended that when Gossman said nothing about her prior service and subsequently served at his own trial, he was denied his right to a verdict by an impartial and competent jury, in violation of the Sixth Amendment.

The district court dismissed Malloy's motion, ruling, *inter alia,* that Malloy's claim challenging the qualifications of juror Gossman was waived when not raised at the inception of the trial. On appeal, we vacated the order of the district court, finding that the issue had been raised at *voir dire* and that Gossman had not responded truthfully when the veniremen were asked several questions about their knowledge of the case. We also held that Gossman's prior service in the Webster case rendered her an incompetent juror and that upon a timely challenge she should have been removed for cause. We declined to rule on the merits of Malloy's petition, however, and remanded the case with instructions to the district court to hold an evidentiary hearing if it deemed one necessary. We further stated that "[u]nless persuasive new facts or legal arguments appear, the district court must set aside the conviction or grant other appropriate relief."[5]

On January 16, 1984, the district court held the hearing as directed. At that hearing, Malloy's counsel stated that Gossman was seventy-seven years old and had suffered four strokes since 1975. Counsel also stated that Gossman was unable to speak but that she had communicated in a written note that she recalled none of the facts or circumstances surrounding her service in the case. The parties agreed that Gossman was too ill to testify and to explain her silence on *voir dire.* The parties further agreed that at that time in 1984, nearly ten years after the trial, Gossman had no memory of the trial, and her testimony would not present new facts for con-

1. Malloy's venire panel heard the following characterization of the case:

   The matter for your consideration is an indictment brought by the United States against John Archer Malloy, charging that on or about January 3rd, 1975, in Alexandria, Virginia, John Archer Malloy did knowingly, unlawfully and with felonious intent take by force, violence and intimidation from the person and presence of Kenneth Eckland and others approximately $20,593 in money belonging to and in the care, custody, control, management and possession of the Alexandria National Bank, Rosemont Branch, 1 East Walnut Street, Alexandria, Virginia, the deposits of which are insured by the Federal Deposit Insurance Corporation and John Archer Malloy, in committing the aforesaid acts, did put in jeopardy the life of Kenneth Eckland and others by the use of a dangerous weapon, that is, a pistol.

2. *United States v. Malloy,* 530 F.2d 971 (4th Cir.1975) (unpublished).

3. *United States v. Malloy,* 634 F.2d 627 (4th Cir.1980); *United States v. Malloy,* 553 F.2d 97 (4th Cir.1977) (unpublished).

4. Malloy also alleged that three other jurors from his jury had been in the venire from which the Webster jury was chosen and may have been tainted by hearing the evidence in Webster's trial.

5. *United States v. Malloy,* 705 F.2d 446, slip op. at 4–5 (unpublished) (4th Cir.1983).

sideration. As a result, Gossman did not appear at the hearing, and neither side offered any evidence.

The district court denied Malloy's motion to vacate on April 30, 1984. The court concluded that Malloy was not denied his right to due process by Gossman's service on his jury. The court held that the standard of review applied to assess juror impartiality after a verdict has been reached, is a showing of actual bias, and that Malloy had failed to meet his burden of showing that Gossman harbored actual bias.

The court also believed, however, that Malloy would still be entitled to a new trial if the facts supported a claim of bias *per se*, irrespective of Gossman's inability to testify about her mental state during Malloy's trial. The court held that the findings of this case did not present appropriate circumstances for a finding of bias *per se*. The district court noted that Malloy was tried and convicted on the basis of evidence "totally independent" of the evidence adduced at the Webster trial, and that Gossman's exposure to the Webster evidence created no realistic possibility that she was prejudiced in fact at Malloy's trial.

This appeal followed.

## II.

On appeal, Malloy contends he was denied his right to a fair and impartial jury in violation of the Sixth Amendment because he was convicted by a jury that was tainted by previous knowledge of the case and by a juror, Gossman, who had earlier voted to convict his codefendant. Malloy argues that when two persons are charged with the same offense arising from the same transaction, and are tried separately, a juror who has voted to convict in one case is incompetent to sit in the other. Malloy further argues that because Gossman was incompetent to serve at his trial, she should be presumed to be biased, and the verdict in which she participated cannot be allowed to stand. Malloy urges us to adopt a *per se* rule in joint service cases. We decline the invitation.

When we remanded this case to the district court, we held that Gossman was not competent to serve at Malloy's trial. We also held that Gossman should have been removed from the jury panel had defense counsel known about her service in the earlier trial. That is the law of this case. We now expressly state as a rule in this Circuit that the same juror should not sit on the trials of two defendants who are charged with the same crime and tried separately. None of this, however, answers the dispositive question of whether Gossman's legal incompetence to serve means that the verdict in which she participated in 1975 must now be set aside almost ten years later on collateral attack. For the reasons that follow, we conclude that the verdict should stand.

In *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Supreme Court examined the problem of alleged juror misconduct discovered after conviction. There, a juror applied during the trial for a position as an investigator in the office of the prosecuting attorney. The juror did not disclose his plans to seek this employment prior to trial, nor did the prosecutors disclose the employment application to the court or defense counsel until after the verdict was returned. The defendant sought federal habeas relief and argued that it was not necessary for him to prove actual bias, but rather that the law must impute bias to jurors under the circumstances of his case. The Supreme Court rejected this argument and held that "the remedy for juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215, 102 S.Ct. at 945. As the Supreme Court explained:

[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtual-

ly impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ... held in this case.

*Id.* at 217, 102 S.Ct. at 946.

■ The lesson of *Smith v. Phillips* and its progeny[6] is that the participation of a juror whose impartiality is suspect for reasons not known to defense counsel at the time of *voir dire* does not *per se* require a new trial. Instead, the verdict may be set aside if a post-trial hearing demonstrates that the juror was actually biased. Here, the district court held the required hearing, but neither the government nor Malloy produced any evidence concerning Gossman's supposed bias. It was stipulated that Gossman was incapable of testifying as to her state of mind at the time of trial.

■ The question then becomes which party had the burden of proof at the hearing on remand. We hold that the burden of proof to show actual prejudice lay with Malloy. The Supreme Court held as much when it ruled that it is the defendant's opportunity to prove bias at a post-trial hearing. *Id.* at 215, 102 S.Ct. at 945. Our conclusion is further supported by the Supreme Court's decision in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), that the plain error standard cannot be applied to defects in the prosecution raised for the first time in a collateral attack, and that a defendant making such an attack has the burden of meeting a much higher standard.

In *Frady,* the defendant was convicted of first-degree murder in 1963. Sixteen years later, he filed a motion under 28 U.S.C. § 2255, seeking the vacation of his sentence because the jury instructions used at his trial in 1963 were defective. The United States Court of Appeals for the District of Columbia vacated Frady's conviction, holding that the proper standard to apply was the "plain error" standard governing relief on direct appeal from errors not objected to at trial under Fed.R.Crim.P. 52(b). The Supreme Court did not disagree that the malice instruction was erroneous but, nevertheless, reversed the Court of Appeals' judgment and reinstated the conviction. The Court stated that:

Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post-conviction collateral attacks. To the contrary, a final judgment commands respect.

. . . .

... Contrary to Frady's suggestion, he must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension.

*Id.* at 164–65, 170, 102 S.Ct. at 1592–93, 1596 (emphasis in original). Thus, *Frady* reinforces our conclusion that Malloy must show that Gossman's presence "worked to his *actual* and substantial prejudice." *Id.* at 170, 102 S.Ct. at 1596.

**6.** After *Smith v. Phillips,* we and other courts have required a showing of actual bias in cases involving alleged juror impartiality after a verdict has been reached. *E.g., United States v. Pennell,* 737 F.2d 521 (6th Cir.1984), *cert. den.,* — U.S. —, 105 S.Ct. 906, 83 L.Ed.2d 921 (1984) (No. 84–526); *Rogers v. McMullen,* 673 F.2d 1185 (11th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 740, 74 L.Ed.2d 961 (1983); *United States v. Billups,* 692 F.2d 320 (4th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983).

This he has failed to do. Malloy has produced no evidence that Gossman was actually prejudiced against him. As a result of Malloy's delay in raising this issue, Gossman became too aged and infirm to testify as to what effect, if any, her service in the Webster trial had on her deliberations in the present case. Gossman's unavailability is unfortunate, but Malloy has only himself to blame. He raised no question at all concerning Gossman until nearly seven years had passed and after his conviction has been affirmed on direct appeal and his collateral attacks on his conviction and sentence had twice been denied.

If Malloy could win a new trial at this late date, and could do so on the theory that the government bears the burden of proving Gossman was not biased the result would be extraordinarily unfair. Malloy's delay has denied the government its only means of direct proof that Gossman was an impartial juror despite what she might have remembered from the Webster trial. Accordingly, we hold that because Malloy's delay has extinguished the government's ability to refute his claim of bias, and because Malloy has not shown or even attempted to show that he could not have discovered the basis for this claim before Gossman's loss of capacity, his request for a new trial must be denied pursuant to Rule 9 of the Rules Governing Proceedings under 28 U.S.C. § 2255,[7] and pursuant to the common-law doctrine of laches.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.[8]

AFFIRMED.

7. Rule 9 provides in pertinent part that:
   A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

8. Finally, we note that our disposition of this case is consistent with our instructions on re-

mand to the district court to hold a new trial unless "persuasive new facts or legal arguments appear." *United States v. Malloy,* 705 F.2d 446, slip op. at 4–5 (unpublished) (4th Cir.1983). The new fact made known at the January 16, 1984, hearing is that there exists no evidence whatever that Gossman was actually biased against Malloy. The new legal argument is that *Frady* and *Smith v. Phillips* were not considered by us in remanding the case.