33 F.3d 53
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Boyd Adkerson, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Raymond DURHAM, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Vernon WALLER, Defendant-Appellant.
 Nos. 93-5547, 93-5548, 93-5549.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 9, 1994.
Decided: August 10, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, Chief District Judge. (CR-92-86-D)
 Anthony W. Harrison, Sr., Harrison, North, Cooke & Landreth, Greensboro, North Carolina, for Appellant Adkerson; Jane Siobhan Glenn, Fishwick, Jones & Glenn, Roanoke, Virginia, for Appellant Durham;
 Terry N. Grimes, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Virginia, for Appellant Waller.
 Ray B. Fitzgerald, Jr., Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 J. Michael Gray, King, Fulghum, Snead, Nixon & Grimes, P.C., Roanoke, Virginia, for Appellant Waller.
 Robert P. Crouch, Jr., United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and
 OPINION
 HAMILTON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants were convicted of various charges arising out of a cocaine trafficking conspiracy. They now allege several trial and sentencing errors on the part of the district court. Because we find no merit in these challenges, we affirm the judgments below.
 
 I.
 
 2
 In February 1993, Boyd William Adkerson, Jr., William Raymond Durham, and James Vernon Waller were tried before a jury on various charges related to a cocaine trafficking conspiracy in and around Danville, Virginia. At trial, the government introduced evidence that all three of the defendants were involved in a drug conspiracy headed by Steve Manly Powell. The government's evidence included testimony by Powell himself, who had earlier pled guilty to a variety of charges stemming from his drug activities. According to the government, the Powell drug ring routinely transported cocaine from Florida to Virginia for sale in the Danville area. Testimony by government witnesses indicated that Adkerson was closely tied to Powell and engaged in frequent cocaine purchase and sale transactions with him. The government also presented testimony against both Durham and Waller indicating that their work at Powell's farm included participation in both handling and distributing cocaine. Other evidence indicated that they were also involved in wiring money to and from Florida to facilitate Powell's cocaine deals.
 
 
 3
 At the conclusion of trial, all three defendants were found guilty of conspiracy to possess with intent to distribute cocaine. See 21 U.S.C. Secs. 841(a)(1), (b)(1)(A) & 846. Durham and Waller were also convicted of two counts of money laundering. See 18 U.S.C. Secs. 1956(a)(1)(A)(i) & (a)(1)(B)(i). The defendants now appeal, challenging various aspects of their convictions and sentences.
 
 II.
 
 4
 Appellants first argue that the government presented insufficient evidence to demonstrate that they were involved in a cocaine conspiracy.
 
 A.
 
 5
 Adkerson argues that his conspiracy conviction is unsupported by the evidence introduced at trial. Essentially, Adkerson contends that while he did have some association with Powell's drug activities, he never had an agreement with Powell to participate in a drug trafficking conspiracy. Instead, Adkerson maintains, he was engaged in his own criminal activities, some of which overlapped with the Powell conspiracy through mere happenstance. According to Adkerson, none of these activities demonstrates that he and Powell acted with any common purpose or goal.
 
 
 6
 We cannot agree. The government need not prove that Powell and Adkerson were connected in every one of their drug activities. Instead, "[o]nce it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.1992). Here, the evidence presented by the government at trial demonstrated that Powell and Adkerson were linked together rather tightly in the cocaine trafficking business. Powell testified that their relationship extended back for a period of ten years and stated that Adkerson had regularly supplied him with cocaine during that entire period. Powell also testified that he, in turn, acted as a supplier for Adkerson, and a Powell drug courier testified that he had participated in at least one cocaine delivery to Adkerson. Further testimony from Powell indicated that on two occasions, Adkerson gave him money to procure cocaine in Florida. Moreover, in one instance, Adkerson and Powell travelled to Florida together, where they purchased three kilograms of cocaine.
 
 
 7
 Adkerson, of course, questions the credibility of some of this testimony. However, the question of witness credibility is one for the jury to determine, see United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982), and the jury chose to credit the evidence presented by the government. Viewing this evidence, as we must, in the light most favorable to the government, see United States v. Jones, 735 F.2d 785, 790 (4th Cir.1984), it is clear that the jury had ample basis for concluding that Adkerson was a participant in the drug trafficking conspiracy at issue here.
 
 B.
 
 8
 Durham and Waller similarly argue that although they were associated with Powell, they were not involved in the drug conspiracy. Both claim that they were simply employed by Powell to do various maintenance tasks on his farm. While Durham admits to some personal drug use on the farm, he argues that it had nothing to do with any other activities that Powell may have conducted. Both men also argue that they were unaware that their wire transfers to and from Florida had any connection to illegal drug activities. For these reasons, they contend that there was insufficient evidence to support their conspiracy and money laundering convictions.
 
 
 9
 We are again unpersuaded. While some of the activities performed by Durham and Waller at the farm were unquestionably legitimate, the government's evidence indicated that both men were engaged in more than just mending fences. Powell testified that Durham and Waller travelled to Florida on several occasions to pick up cocaine. Ernest Cullop, another participant in the conspiracy, testified that he once helped unload five kilograms of cocaine the two men had brought back to the farm from Florida. Other testimony indicated that the men helped deliver cocaine to the various dealers Powell sold to. Finally, Powell himself testified as to Durham and Waller's involvement with the various wire transfers to and from Florida that were needed to settle his drug bills. On the basis of this evidence, we cannot say that a reasonable trier of fact would have much difficulty reaching the conclusion that this jury did regarding Durham and Waller's involvement in a drug conspiracy. See Jones, 735 F.2d at 790; see also United States v. Roberts, 881 F.2d 95, 101 (4th Cir.1989) (stating that a defendant may still be guilty of conspiracy even if he played only a minor role).
 
 III.
 
 10
 One additional element of the proof introduced by the government to demonstrate Durham and Waller's involvement in the conspiracy was the fact that both carried guns while working on Powell's farm. Citing Federal Rule of Evidence 404(b), both men now claim that this evidence should not have been admitted at trial.[1] They argue that the evidence simply indicated that they both carried guns while on the farm, not that the mere carrying of the guns had anything to do with furthering the conspiracy. For this reason, they contend that the evidence regarding the guns was unduly prejudicial "other acts" evidence, the admission of which necessitates overturning the convictions.
 
 
 11
 This argument lacks merit. To begin with, the evidence in question does not involve other "acts" that are in any way distinct from the crime at issue here. Instead, the fact that Durham and Waller routinely carried .45 caliber pistols while working on Powell's farm provided direct evidence from which a jury could infer that both men were involved in illegal drug trafficking activities. Testimony on this issue is thus integrally related to the offenses the two men were charged with, and is not the sort of other criminal activity evidence excluded by Rule 404(b). See United States v. Mark, 943 F.2d 444, 448 (4th Cir.1991); United States v. Weeks, 716 F.2d 830, 832 (11th Cir.1983).
 
 
 12
 Furthermore, even if the evidence regarding Durham and Waller's gun possession were to be considered 404(b) evidence, it would still have been admissible. Both Durham and Waller claimed that they were simply accidental participants in the conspiracy. The fact that these two supposed farm workers carried weapons, however, provided an indication that they were both aware of the conspiracy and involved in protecting its operations. See Fed.R.Evid. 404(b) (stating that other acts evidence is admissible to show, among other things, "intent" and "knowledge"). Indeed, their objection that the evidence does not truly demonstrate involvement in the conspiracy goes not to the admissibility of the evidence, but to its weight; the jury therefore is free to credit their position as it sees fit, see Tresvant, 677 F.2d at 1021. As such, the district court did not abuse its discretion in allowing the admission of evidence under Rule 404(b) that directly rebutted Durham and Waller's innocent actor defense. See United States v. Haney, 914 F.2d 602, 607 (4th Cir.1990).
 
 IV.
 
 13
 Appellants next raise a juror bias challenge. They explain that there was some evidence that the husband of one of the jurors, a Mr. James Mayhew, made a threatening statement to a relative of Adkerson. Defendants contend that the district court did not properly address this issue. While the court did hold a hearing on whether the alleged threats evidenced juror bias, it allowed only Mr. Mayhew to testify before ruling that there was no bias problem. Defendants contend that this hearing was insufficient because they should have had an oppor tunity to question Mrs. Theresa Mayhew, the actual juror involved, before any final determination on the question was made.
 
 
 14
 In order to demonstrate juror bias, the defendants must produce evidence of "actual bias" on the part of a juror. Smith v. Phillips, 455 U.S. 209, 215 (1982); see United States v. Malloy, 758 F.2d 979, 981-82 (4th Cir.1985). Here, no such evidence exists. Mr. Mayhew's alleged remark had no effect on either Mrs. Mayhew or the trial. Mr. Mayhew clearly stated that both he and Mrs. Mayhew understood that she was not allowed to discuss the issues in the trial with anyone; he further stated that he had engaged in no trial-related conversations with her during the course of her jury service. After this testimony, the district court concluded that there was simply no basis for continuing the hearing and ruled that no juror bias had occurred. We affirm this ruling.
 
 V.
 
 15
 Finally, Adkerson challenges the district court's findings regarding the amounts of cocaine attributable to him for purposes of sentencing. The Presentence Report found Adkerson responsible for between five and fifteen kilograms of cocaine, a range which results in a base offense level of 32. See U.S.S.G. Sec. 2D1.1(c)(6). While Adkerson admits that he is responsible for approximately two kilograms of cocaine, he contends that no other drug amounts were appropriately attributable to him.[2] Specifically, he questions whether the district court correctly attributed to him a three kilogram quantity of cocaine that he and Powell had purchased on a trip to Florida in 1989. Adkerson explains that because he took only one of the three kilograms for himself and left the others for Powell and another individual, this purchase had nothing to do with furthering the Powell conspiracy. He therefore concludes that the district court could not appropriately include any of this amount in its sentencing considerations.
 
 
 16
 Again we disagree. The district court carefully reviewed the recommendations in the Presentence Report and made particular findings with respect to the drug amounts attributable to Adkerson. In doing so, the court specifically addressed, and rejected, Adkerson's challenge regarding the Florida trip. The court explained that the conspiracy had been to procure and distribute cocaine and therefore that it was simply irrelevant that Adkerson did not take all of the cocaine they had purchased while on a trip together. The district court also credited the testimony of another Powell associate regarding delivery of a kilogram of cocaine to Adkerson and testimony concerning the transfer of a half kilogram of cocaine from Powell to Adkerson to settle a dispute between the two men. The court's findings were amply supported by evidence in the trial record, and we have no reason to believe that it committed clear error in attributing any of these amounts to Adkerson. See Mark, 943 F.2d at 450. These quantities, together with the quantities for which he has admitted responsibility, clearly place Adkerson over the five kilogram minimum.
 
 VI.
 
 17
 For the foregoing reasons, the judgments are
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 Rule 404(b) states:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 [2]
 The two kilogram amount results from two transactions: Powell's purchase of a kilogram for Adkerson during a 1987 trip to Florida and Powell's transfer of approximately a kilogram to Adkerson as payment for money that one of Powell's associates had stolen from Adkerson