UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                          No. 00-4748

JOHN SANDALIS; MICHELLE SANDALIS,
            *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-98-82)

Argued: June 7, 2001

Decided: August 1, 2001

Before WILKINS and WILLIAMS, Circuit Judges, and
Andre M. DAVIS, United States District Judge for
the District of Maryland, sitting by designation.

Reversed and remanded with instructions by unpublished per curiam
opinion.

## COUNSEL

**ARGUED:** Peter Hugh White, HUNTON & WILLIAMS, McLean,
Virginia, for Appellants. Gregory Victor Davis, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee. **ON BRIEF:** Charles P. Rosenberg, Robert C.
Stacy, II, HUNTON & WILLIAMS, McLean, Virginia, for Appel-

lants. Paula M. Junghans, Acting Assistant Attorney General, Robert P. Crouch, Jr., United States Attorney, Robert E. Lindsay, Alan Hechtkopf, Meghan S. Skelton, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

John and Michelle Sandalis (collectively, the Sandalises) appeal their convictions and sentences for various charges related to tax fraud and tax evasion. On appeal, the Sandalises claim that the district court erred by failing to strike prejudicial evidence regarding John Sandalis's character, by denying Michelle Sandalis's motion for judgment of acquittal, and by denying their motion for a new trial based upon potential juror bias without holding an evidentiary hearing to determine whether and to what extent the jury foreperson was biased against them. We agree that the district court was required to conduct an evidentiary hearing once allegations of the juror's potential bias surfaced; thus, we reverse and remand with instructions for the district court to conduct such a hearing. Insofar as this evidentiary hearing may prompt the district court to reach a different conclusion with respect to the Sandalises' motion for a new trial, we reserve judgment on the remainder of the Sandalises' issues on appeal pending receipt of the district court's order pursuant to this remand.

I.

Because our resolution of this appeal presently focuses on the necessity of further evidentiary development on the claim of juror bias, we will provide only a brief overview of the facts relevant to the Sandalises' convictions. The Sandalises operated Dalis Painting, Inc., one of the principal painting contractors for the University of Vir-

ginia. John Sandalis owned the company and managed the operations and painting contracts, and Michelle Sandalis was the bookkeeper for the company.

On December 10, 1998, a grand jury returned a six-count indictment against the Sandalises. The grand jury indicted John Sandalis on two counts of attempted tax evasion under 26 U.S.C.A. § 7201 (West 1989) (Counts One and Two) and two counts of preparing false tax returns under 26 U.S.C.A. § 7206(1) (Counts Five and Six). The grand jury indicted Michelle Sandalis on two counts of attempted tax evasion under 26 U.S.C.A. § 7201 (West 1989) (Counts One and Two) and two counts of assisting in the preparation and presentation of false tax returns under 26 U.S.C.A. § 7206(2) (West 1989) (Counts Three and Four).

The Sandalises were tried before a jury on March 13-15, 2000 in the United States District Court for the Western District of Virginia. On March 15, 2000, the jury returned a guilty verdict with respect to all counts. After the verdict was returned, the Sandalises received information that the jury foreperson, Elizabeth Braswell, had been involved in recent, adversarial business dealings with the Sandalises. Based upon this information, the Sandalises moved for a new trial. On June 14, 2000, the district court held a hearing on the Sandalises' motion and denied it, concluding that Braswell was not biased.

On October 2, 2000, the district court sentenced John Sandalis to 26 months imprisonment and sentenced Michelle Sandalis to 12 months imprisonment. On October 12, 2000, the Sandalises filed a notice of appeal to this Court. On appeal, the Sandalises argue that the district court erred by failing to conduct an evidentiary hearing for the purpose of determining whether Braswell's recent, undisclosed contacts with the Sandalises rendered her biased against them.

## II.

The Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. We review the district court's decision concerning whether to order an evidentiary hearing on juror bias for abuse of discretion. *United States v. Gravely*, 840 F.2d 1156, 1159

(4th Cir. 1988). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

As is reflected in Federal Rule of Evidence 606(b),[1] requests to impeach jury verdicts pursuant to post-trial contact with jurors generally are disfavored. *Gravely*, 840 F.2d at 1159. However, when a party makes a threshold showing that improper external influences came to bear on the decision-making process of a juror, an evidentiary hearing on juror bias not only is allowed under Federal Rule of Evidence 606(b), but is required. *See Remmer v. United States*, 347 U.S. 227, 229-30 (1954) (holding that where defendant learned for the first time after verdict that unnamed person had remarked to a juror during trial that he could profit by bringing in a verdict favorable to defendant and that the matter had been investigated by Federal Bureau of Investigation at judge's request, defendant was entitled to a hearing to determine effect of remark and investigation on jury and whether defendant had been prejudiced thereby); *see also Tanner v. United States*, 483 U.S. 107, 117 (1987) (discussing, as one of the exceptions to the general rule barring interrogation of jurors, allegations of "extraneous influence" as affecting the jury's verdict); *United States v. Malloy*, 758 F.2d 979, 982 (4th Cir. 1985) (referring to the post-trial evidentiary hearing regarding potential juror bias as a "required" hearing); *United States v. Herndon*, 156 F.3d 629, 637 (6th Cir. 1998) (holding that juror's recollection, during trial, that juror may have had prior business dealings with defendant was "extraneous influence" on juror and that district court's refusal to conduct an evidentiary hearing on bias was an abuse of discretion); *United States v. Brantley*, 733

---

[1]Federal Rule of Evidence 606(b) prohibits a juror from

> testify[ing] as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.*

Fed. R. Evid. 606(b) (emphasis added).

F.2d 1429, 1439 (11th Cir. 1984) ("'A party claiming that an improperly influenced jury returned a verdict against him must be given an opportunity to prove that claim.'" (quoting *United States v. Forrest*, 620 F.2d 446, 457 (5th Cir. 1980))). As the Supreme Court held in *Remmer*, when allegations of juror impartiality surface, "[t]he trial court should not decide and take final action ex parte . . ., but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*, 347 U.S. at 229-30; *see also Smith v. Phillips*, 455 U.S. 209, 215 (1982) (holding that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias").

At the hearing on the Sandalises' motion for a new trial, the Sandalises presented numerous affidavits demonstrating that Braswell had a continuous course of negative contacts with Dalis Painting and with the Sandalises over the course of the previous two years. Throughout 1998 and 1999, Dalis Painting performed painting and lead abatement work in and around Braswell's office, which was situated within the Faulkner House, a building on the campus of the University of Virginia. Employees of Dalis Painting and employees of the University averred that Braswell had complained at length about various aspects of Dalis Painting's work. For example, Michael Ripley, one of Dalis Painting's employees, averred that he recognized Braswell as a woman who "was always complaining" while they completed work in and around her office. (J.A. at 91.) Another Dalis Painting employee, Imad Saleh, averred that Braswell "complained constantly . . . about the noise, dust, barricaded areas and the smell from the heat gun used in stripping." (J.A. at 103.) Similarly, the project manager for the University of Virginia on the job involving Braswell's office building averred that a lady named "Beppy," which he later found out to be Braswell's nickname, "complained about many things, including very small items and details on the job." (J.A. at 106.) Braswell spoke directly to John Sandalis on at least two occasions to discuss her various complaints. Braswell also spoke with Michelle Sandalis on at least one occasion.[2]

---

[2]The Sandalises also presented evidence indicating that Braswell would have recognized them as the people about whom she had previ-

According to the affidavits, the Sandalises had a number of legitimate reasons for their failure to discover Braswell's potential bias prior to the jury rendering its verdict. Several of Dalis Painting's employees came to court for the first time on the last day of trial and informed John Sandalis after the verdict was returned that, as a result of their work at the Faulkner House, they recognized Braswell. On the jury list, Braswell had listed the Miller Center, rather than the Faulkner House, as her place of employment.[3] Because the Sandalises did not recognize the Miller Center as a place they had worked, they also did not recognize Braswell. Upon being informed about Braswell's connection to the Faulkner House, the Sandalises recalled their previous contacts with Braswell. Similarly, Braswell did not reveal her prior contacts with Dalis Painting or with the Sandalises personally when inquiry was made during voir dire.[4]

Having presented the district court with numerous affidavits, detailing with sufficient indicia of reliability, examples of recent, adversarial business dealings between Braswell and Dalis Painting, as well as with the Sandalises personally, and having provided legitimate

---

ously complained. John Sandalis stated that he recalled meeting Braswell during a site visit and that he personally performed the inspections throughout the several months that Dalis Painting worked on Braswell's office building. John Sandalis also averred that he spoke with Braswell on the telephone and that he customarily answers the telephone by saying, "This is John Sandalis[.] [C]an I help you?" (J.A. at 98.) Moreover, Dalis Painting employees all wear uniforms with "large Dalis Painting logo[s]" printed on them and Dalis Painting's vehicles and equipment are similarly marked. (J.A. at 103-04.)

[3]The Miller Center of Public Affairs is a non-partisan research center at the University of Virginia. It is currently named the Faulkner House in honor of American novelist William H. Faulkner.

[4]Apparently, during voir dire, neither the district court nor counsel asked whether any of the jurors were familiar with the Sandalises or Dalis Painting. The district court asked the jurors, however, whether any member of the panel knew of a reason why he or she could not "hear the facts of the case fairly and impartially and render a just verdict." (J.A. at 247.) One woman responded that she knew the defendants and agreed that this would make it difficult for her to render a fair and impartial verdict; thus, she was excused.

reasons for failing to raise their connection with Braswell prior to the jury returning its verdict, the Sandalises satisfied their threshold showing of potential bias. *See Remmer*, 347 U.S. 230 (holding that when concrete allegations of juror partiality surface, the district court must conduct a hearing "with all interested parties permitted to participate"); *Herndon*, 156 F.3d at 635 (concluding that, where non-speculative evidence indicated that a juror had been involved in a possibly "negative" business dealing with the defendant six years earlier, the district court was required to conduct a *Remmer* hearing into potential bias). Thus, it was an error of law, and, therefore, an abuse of discretion, for the district court to decline to conduct an evidentiary hearing that included questioning Braswell regarding the extraneous factors that allegedly came to bear on her decision making process.[5] Indeed, the Government conceded before the district court that an evidentiary hearing was required and requested Braswell's presence at the hearing on the motion for the new trial. (J.A. at 188 ("[T]he Fourth Circuit has determined unambiguously just such a hearing is required.")). Nevertheless, the district court denied the Government's motion to secure Braswell's attendance at the motion hearing, stating that her presence was "not needed," (J.A. at 227), and ruling, without questioning Braswell, that the Sandalises' claim of potential juror bias was baseless.[6] Thus, we remand for the district court to conduct a *Remmer* hearing in which Braswell is questioned and in which the Sandalises will bear the burden of proving that Braswell's prior business dealings with the Sandalises compromised her ability to render a fair and impartial verdict. *Malloy*, 758 F.2d at 982 (holding that the defendant bears the burden of proof in a *Remmer* hearing).

---

[5]We leave for the district court to determine whether the other jurors also must be interrogated. *See United States v. Perkins*, 748 F.2d 1519, 1529-30 (11th Cir.) (noting that the district court interviewed all the jurors, during which the jurors reported that the particular juror who was the subject of the *Remmer* hearing was "especially committed" to finding the defendant guilty (internal quotation marks omitted)).

[6]The district court stated, "that sounds like a paint job in my house and my wife complaining to the painters, but they do what they've got to do, they get it done and they leave. I don't get how you jump from there that somebody would find somebody guilty of a crime because of that." (J.A. at 865.)

## III.

Based upon reliable evidence presented to the district court demonstrating that Braswell, prior to trial, had recent, adversarial contact with Dalis Painting and with the Sandalises directly, the district court erred by denying the Sandalises' motion for a new trial without conducting an evidentiary hearing on Braswell's potential bias. Therefore, we must remand for a *Remmer* hearing, through which the district court must revisit the Sandalises' motion for a new trial based upon Braswell's potential bias, develop a record regarding the alleged bias, and determine any effect of such bias on the integrity of the jury's verdict.[7]

*REVERSED AND REMANDED WITH INSTRUCTIONS*

---

[7]If the district court concludes, after conducting this hearing, to grant the Sandalises' motion for a new trial, the Sandalises' remaining claims will become moot. If, on the other hand, the district court determines that Braswell was not biased and again denies the motion, we will undertake to resolve the Sandalises' remaining challenges.