UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN SANDALIS; MICHELLE SANDALIS,
*Defendants-Appellants.*

No. 00-4748

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JOHN SANDALIS; MICHELLE SANDALIS,
*Defendants-Appellants.*

No. 02-4073

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-98-82)

Argued: June 7, 2001

Decided: August 1, 2001

Decided after remand: July 3, 2002

Before WILKINS and WILLIAMS, Circuit Judges, and
Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Peter Hugh White, HUNTON & WILLIAMS, McLean, Virginia, for Appellants. Gregory Victor Davis, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Charles P. Rosenberg, Robert C. Stacy, II, HUNTON & WILLIAMS, McLean, Virginia, for Appellants. Paula M. Junghans, Acting Assistant Attorney General, Robert P. Crouch, Jr., United States Attorney, Robert E. Lindsay, Alan Hechtkopf, Meghan S. Skelton, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

John and Michelle Sandalis (collectively, the Sandalises) appeal their convictions and sentences for tax fraud and tax evasion following our remand for the district court to conduct an evidentiary hearing regarding the potential bias of the jury foreperson. *See United States v. Sandalis*, No. 00-4748, 2001 WL 867389 (4th Cir. Aug. 1, 2001). Finding no reversible error, we affirm.

I.

The Sandalises operated Dalis Painting, Inc., one of the principal painting contractors for the University of Virginia. John owned the company and managed the operations and painting contracts, and Michelle was the bookkeeper. The Sandalises were prosecuted for their failure to report revenues from Dalis Painting as income on their corporate and individual income tax returns in 1994 and 1995.

Dalis Painting maintained a corporate account at Central Fidelity Bank, and corporate earnings also were deposited into several accounts held in John's name, which were maintained at Jefferson National Bank (JNB accounts)[1] and NationsBank. Dalis Painting's general ledger accounted for the transactions in the NationsBank accounts, but it made no mention of any transactions involving the JNB accounts. Similarly, the 1994 and 1995 corporate tax returns for Dalis Painting reported the income deposited into the NationsBank account, but they did not report the income deposited into the JNB accounts. The omission of the income deposited into the JNB accounts resulted in Dalis Painting underreporting its income by $267,584 for 1994 and $125,056 for 1995.

On the Sandalises' individual income tax returns for 1994 and 1995, they did not report any dividend income from Dalis Painting, but in both years, the Sandalises used corporate income from the NationsBank and JNB accounts for personal expenditures. By failing to report these expenditures as income, the Sandalises underreported their joint individual income by $209,962 in 1994 and by $56,079 in 1995.

The Sandalises were charged with two counts of attempted tax evasion, in violation of 26 U.S.C.A. § 7201 (West 1989) (Counts One and Two). Additionally, John was charged with two counts of preparing false tax returns, in violation of 26 U.S.C.A. § 7206(1) (Counts Five and Six), and Michelle was charged with two counts of aiding in the preparation and presentation of false tax returns, in violation of 26 U.S.C.A. § 7206(2) (West 1989) (Counts Three and Four). At trial, the Sandalises conceded that the 1994 and 1995 corporate and individual income tax returns were materially false and resulted in a substantial tax debt. They contended, however, that they did not intend to violate the tax laws and that their accountant, Arthur Gisser, solely was to blame for the inaccuracies in their tax returns.

The jury found the Sandalises guilty of all counts. John was sentenced to 26 months imprisonment, and Michelle was sentenced to 12 months imprisonment. The Sandalises filed a notice of appeal to this

---

[1]Two separate accounts were maintained at JNB. One was interest bearing, and the other was non-interest bearing. (J.A. at 535.)

court, arguing, inter alia, that the district court erred in failing to hold a post-trial evidentiary hearing to determine whether the jury foreperson, Elizabeth Braswell, was biased against them. We remanded for the district court to conduct the requisite hearing in accordance with *Remmer v. United States*, 347 U.S. 227, 229-30 (1954). At the evidentiary hearing, several witnesses testified, including Braswell and eight of the other eleven jurors who had served during the Sandalises' trial. Based upon this testimony, supplemental briefing, and oral argument, the district court found that Braswell was an impartial juror and denied the Sandalises' motion for a new trial.

On appeal, the Sandalises challenge the district court's findings and denial of their motion for a new trial, contending that the evidence demonstrated that Braswell was biased against them, depriving them of their Sixth Amendment right to trial by an impartial jury. Additionally, the Sandalises renew arguments from their previous appeal, claiming that the district court erred by failing to strike prejudicial evidence regarding John's character and by denying Michelle's motion for judgment of acquittal.[2] We have consolidated the Sandalises' current appeal with their previous appeal and now undertake to resolve each claim of error in turn.

## II.

In *United States v. Cheek*, 94 F.3d 136 (4th Cir. 1996), we developed a specialized standard of review for the denial of a motion for a new trial based upon juror bias, providing as follows:

> The standard of review of the district court's opinion involves three inquiries. We review historical facts for clear error. Questions of law are reviewed de novo. . . . Ordinarily, the grant of a new trial is committed to the sound discretion of the district court. However, because the ultimate factual determination regarding the impartiality of the jury necessarily depends on legal conclusions, it is reviewed in light of all the evidence under a somewhat narrowed, modified abuse of discretion standard giving the appellate court

---

[2]We reserved judgment on these issues pending completion of the district court's proceedings following the remand.

more latitude to review the trial court's conclusion in this context than in other situations.

*Id.* at 140 (internal citations and quotation marks omitted).

As we stated more fully in our prior opinion, Braswell had contact with employees of Dalis Painting in 1998 and 1999, during which time the company performed painting and lead abatement work in and around Braswell's office, which was located in the Faulkner House at the University of Virginia.[3] *Sandalis*, 2001 WL 867389. At the evidentiary hearing on the Sandalises' claim of juror bias, present and former Dalis Painting employees and a contract manager for the University of Virginia testified that there were quite a few complaints about the painting project and that Braswell complained more than other people about the painters. The Sandalises also submitted the affidavits of three individuals who did not testify at the hearing but who averred that Braswell made numerous complaints about Dalis Painting during its work at the Faulkner House. Finally, the Sandalises presented evidence that Braswell spoke directly to John on the telephone on at least two occasions to discuss her various complaints and that Braswell spoke with Michelle on the telephone on at least one occasion.

Braswell testified, on the other hand, that while her office building had been undergoing a substantial amount of construction and renovation over the past two years, she could not recall complaining about Dalis Painting or its painters. According to Braswell, she did not know and had not heard of the Sandalises prior to her jury service. She testified that between the first and second day of the trial, she recognized the connection between Dalis Painting and the renovation of her office building, but that she did not bring it to the district court's attention because she thought the trial and the renovation work were "disconnected" matters. (J.A. at 970.) Braswell specifically denied telephoning Dalis Painting at any point. Ultimately, Braswell stated that she had been "faithful to [her] oath as a juror," (J.A. at 983), that she "was totally neutral," and that she had no opinions or feelings

---

[3]Dalis Painting employees all wear uniforms with "large Dalis Painting logo[s]" printed on them and Dalis Painting's vehicles and equipment are similarly marked. (J.A. at 103-04.)

about Dalis Painting or the Sandalises that affected her ability to render an impartial verdict, (J.A. at 978). Several of the other jurors testified that Braswell had seemed objective, had not been particularly vocal, never mentioned that Dalis Painting had performed services at Braswell's office,[4] and was randomly selected to serve as the jury foreperson.

In analyzing the Sandalises' claims of actual and implied bias, the district court carefully reviewed all of the competing evidence, explicitly found Braswell's testimony to have been credible, and concluded that the Sandalises had not met their burden of proving that Braswell's prior business dealings with the Sandalises compromised her ability to render a fair and impartial verdict. *See United States v. Malloy*, 758 F.2d 979, 982 (4th Cir. 1985) (holding that the defendant bears the burden of proving bias). The Sandalises contend that Braswell's testimony was incredible and that the district court improperly weighed the evidence, but the district court is uniquely situated to weigh the evidence and make credibility determinations. *See, e.g.*, *United States v. Lancaster*, 96 F.3d 734, 739 (4th Cir. 1996) (en banc) (stating, in the context of a challenge to voir dire, that "an appellate court [cannot] easily second-guess the conclusions of the decision-maker who heard and observed the witnesses" (internal quotation marks omitted)). On this record, we cannot say that the district court abused its discretion in concluding that Braswell was neither actually nor impliedly biased.[5] *See Smith v. Phillips*, 455 U.S. 209, 218-19

---

[4]One juror, Charles Fix, testified that Braswell had told him that "she had seen the [Dalis Painting] sign on the doors of vehicles or something or another, and she had recognized the name." (J.A. at 986-87.)

[5]We note that there is some question as to whether implied bias remains a viable doctrine following the Supreme Court's majority opinion in *Smith v. Phillips*, 455 U.S. 209, 218-19 (1982). *Id.* at 221 (O'Connor, J., concurring) (writing separately to express her "view that the [majority] opinion does not foreclose the use of 'implied bias' in appropriate circumstances"); *cf. Fitzgerald v. Greene*, 150 F.3d 357, 365 (4th Cir. 1998) (noting that the majority opinion in *Smith* appeared to undermine the legitimacy of the implied bias doctrine). Assuming the doctrine's continued viability, however, we agree with the district court that the facts alleged by the Sandalises do not support a finding of implied bias.

(1982) (setting forth standard for finding actual bias); *id.* at 222 (O'Connor, J., concurring) (providing examples "that would justify a finding of implied bias"). Accordingly, the district court properly denied the Sandalises' motion for a new trial on the basis of juror bias.

### III.

John next argues that he is entitled to a new trial because the district court, on two separate occasions, erroneously admitted prejudicial evidence regarding his character. During the Government's case-in-chief, the prosecutor asked Lee Koliopolous, an acquaintance of the Sandalises, whether Koliopolous had formed an opinion regarding John's character for truthfulness. Koliopolous responded, "I don't think he's a very truthful person." (J.A. at 584.) John argues that this opinion testimony was forbidden by Federal Rule of Evidence 404(a), which provides:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

---

Additionally, to the extent that *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984), is applicable in this criminal proceeding, *see id.* at 556 (holding in a civil case that a new trial is warranted when a "juror failed to answer honestly a material question on voir dire" and "the correct response would have provided a valid basis for a challenge for cause"); *Fitzgerald v. Greene*, 150 F.3d 357, 362 (4th Cir. 1998) (applying the *McDonough* test in the context of a criminal habeas corpus proceeding), the Sandalises have not demonstrated that the district court erred by denying a new trial on the basis of *McDonough*. The Sandalises claim that Braswell was dishonest for failing to inform the district court of her past interactions with Dalis Painting. Noting that Braswell was never asked whether she recognized the name "Dalis Painting," and that she had not recognized the Sandalises, by name or appearance, the district court found that Braswell honestly responded to all of the voir dire questions, and, in any event, that Braswell was not motivated to conceal her connection to Dalis Painting for reasons affecting her partiality. *See McDonough*, 464 U.S. at 556 ("[O]nly those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."). These factual findings were not clearly erroneous.

> (1)   Character of accused. Evidence of a pertinent trait of character offered by an accused, *or by the prosecution to rebut the same* . . . .

Fed. R. Evid. 404(a) (emphasis added).

Because John failed to object to the admission of this evidence at trial, we review for plain error. *See United States v. Ellis*, 121 F.3d 908, 918-19 (4th Cir. 1997) (applying plain error review to evidentiary challenge). To establish our authority to notice an error not preserved by timely objection, John must demonstrate that an error occurred, that the error was plain, and that the error affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). Even if John can satisfy these requirements, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (second alteration in original and internal quotation marks omitted).

Assuming the admission of Koliopolous's opinion testimony violated Rule 404, John has not met his burden of establishing that his substantial rights were affected. Subsequent to Koliopolous's testimony, John presented evidence of his character for truthfulness through six separate witnesses. Rule 404(a) would have permitted the Government to introduce Koliopolous's opinion testimony to rebut these character witnesses. Significantly, John does not contend that he would not have introduced this positive character evidence had the Government not first introduced Koliopolous's opinion testimony. Thus, the error was one only of timing, because, irrespective of this error, the jury would have had the benefit of Koliopolous's opinion testimony. In fact, the failure to object to the admission of Koliopolous's testimony, coupled with the subsequent admission of positive character evidence, may have been a strategic decision designed to secure the final word on John's character prior to the commencement of jury deliberations. Thus, John has not met his burden of demonstrating that the jury's verdict was "substantially swayed by the error." *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997); *United States v. Vonn*, ___ U.S. ___, 122 S. Ct. 1043, 1048 (2002) (explaining that under plain error review, the defendant "has the burden to

show that his substantial rights were affected" (internal quotation marks omitted)).

John also claims that the district court erred by failing to strike a question that the Government posed to Michael Mulkey, John's former attorney. On direct examination, Mulkey testified that he had known John for several years and that he had a high opinion of John's character. On cross examination, the prosecutor asked Mulkey: "Did you know that Mr. Sandalis within the last few years attempted to persuade Mr. Koliopolous to testify falsely in a judicial proceeding?" (J.A. at 770.) The district court overruled defense counsel's objection and permitted Mulkey to answer the question. Mulkey responded that he did not have any knowledge of the suggested incident.

John concedes that the question complied with Federal Rule of Evidence 405(a), which allows the Government to inquire into specific instances of conduct on cross examination of a character witness for the defendant. *See* Fed. R. Evid. 405(a). Nevertheless, he contends that the question violated Federal Rule of Evidence 404(b) because it amounted to evidence of a prior criminal act, and the Government failed to provide defense counsel with the requisite advance notice of its intent to offer such evidence. Fed. R. Evid. 404(b). This argument is misplaced because Rule 404(b) limits the admission of "*evidence* of other crimes, wrongs, or acts," Fed. R. Evid. 404(b) (emphasis added), and no such evidence was admitted. Mulkey responded to the question by saying that he had no knowledge of the alleged criminal activity, and the Government did not attempt to establish the occurrence of the criminal activity in any other manner. Indeed, the jury explicitly was instructed: "If a lawyer asks a witness a question which contains an assertion of fact, you may not consider the assertion as evidence of that fact." (J.A. at 298.) Therefore, Rule 404(b)'s advance notice requirement was not violated.[6]

## IV.

Finally, Michelle contends that the Government failed to introduce sufficient evidence to support her convictions. A jury verdict "must

---

[6]We also reject John's suggestion that the question constituted prosecutorial misconduct.

be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (internal quotation marks and emphasis omitted). In determining whether the evidence is substantial, we examine whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *Id.* We must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established. *Id.* at 857-58.

Michelle was charged with attempted tax evasion and aiding and assisting in the preparation of false tax returns. She concedes that she filed and assisted in preparing materially false tax returns but claims that the Government failed to introduce substantial evidence that her violations of the tax laws were willful.[7] *See* 26 U.S.C.A. §§ 7201, 7206(2). Willfulness means the voluntary and intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 201 (1991).

The evidence demonstrated that Michelle was involved significantly in managing the finances for Dalis Painting. She served as the company's bookkeeper and was the primary contact for Gisser. Although she now contends that she knew almost nothing about the activity or amount of corporate income in the JNB accounts, John Peirce, an Internal Revenue Service case agent, testified that Michelle told him that she borrowed money from Dalis Painting and deposited those loans into the JNB accounts. She further informed Peirce that she did not keep records of the loans and did not tell Gisser about the loans. Peirce also testified that there were "several large cash with-

---

[7]To obtain a conviction under § 7206(2), the government must prove the following elements beyond a reasonable doubt: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (internal citation omitted). The elements of the section 7201 offense are: (1) willfulness; (2) a substantial tax deficiency; and (3) some affirmative act constituting an attempted evasion of the tax. *United States v. Wilkins*, 385 F.2d 465, 472 (4th Cir. 1967).

drawals" from the JNB accounts, some of which were in the form of checks made payable to Michelle. (J.A. at 529.) Moreover, Peirce testified that when he first asked about the company's records for 1994 and 1995, Michelle stated that the Sandalises had not maintained records related to the company's income in 1994 or 1995, but she later told Peirce that such records had been maintained in the form of a "pink book," which included information regarding invoices and checks that had been deposited into the JNB accounts, and that the records had been provided to Gisser for preparation of the tax returns. (J.A. at 527, 552, 821.) Gisser testified that he provided "guidance to the Sandalises about the use of the corporate credit card" and "told them their personal expenses shouldn't be there." (J.A. at 445.) He further testified that he advised the Sandalises not to take loans from the corporation.[8] (J.A. at 445.) Based upon the evidence of Michelle's individual connection to, and knowledge of, the company's finances, including her status as the bookkeeper, evidence of her knowledge of proper accounting practices, such as Gisser's advice to her, and her lack of candor regarding the maintenance of records relating to the company's income for 1994 and 1995, a reasonable juror could infer that Michelle willfully assisted in the preparation of false tax returns and attempted to evade taxes. *See United States v. Diamond*, 788 F.2d 1025, 1030 (4th Cir. 1987) (affirming conviction for filing false returns and concluding that defendant's knowledge and experience

---

[8]Michelle challenges testimony, such as Gisser's, which was worded in the form of the Sandalises' joint wrongdoing, complaining that she was prejudiced because she was "not tried as an individual, but rather as a part of 'the Sandalises,' as a unit." (Appellant's Br. at 37.) The fact that Gisser's testimony implicates both of the Sandalises, absent some other objection, is not a ground for reversal of Michelle's convictions. Moreover, the district court advised the Sandalises that "it's generally not a very good idea to have the same lawyer representing both defendants," but the Sandalises rejected this advice and agreed to joint representation, and their attorney did not object to the joint nature of the evidence. (J.A. at 491.) Accordingly, to the extent that some of the evidence of their joint wrongdoing may have been problematic, the admission of the evidence does not require reversal of Michelle's convictions. *Cf. United States v. Olano*, 507 U.S. 725, 732 (1993) (providing that errors for which no objection was raised are reviewed for plain error); *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (holding that invited errors do not provide a basis for reversal).

with tax matters was circumstantial evidence of willfulness); *United States v. Wilkins*, 385 F.2d 465, 472 (4th Cir. 1967) ("Subsequent acts of a defendant, such as the fabrication of evidence or false explanations which will aid his defense, are clearly admissible to prove his guilty state of mind."). Because there was substantial evidence to support the jury's verdict, we affirm Michelle's convictions.

V.

For the foregoing reasons, we affirm the Sandalises' convictions and sentences.

*AFFIRMED*