Filed 8/7/13  P. v. McCluney CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062263 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD212842) |
| JERRY WILLIAM MCCLUNEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina, Ronald A. Jakob, and Kelly Ann Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant Jerry William McCluney appeals from a conviction and sentence after he obtained a reversal of his convictions on two counts in a prior appeal and the case was remanded to the trial court for further proceedings. In the prior appeal, McCluney successfully argued that his convictions for assault with a firearm and possession of cocaine for sale should be reversed because the trial court failed to conduct a hearing regarding alleged juror misconduct. On remand, the trial court held a hearing and granted McCluney's motion to release the jurors' contact information. The trial court subsequently entertained McCluney's motion for a new trial on the ground of juror misconduct, and denied the motion. The trial court then reinstated McCluney's convictions on the two relevant counts.

In this appeal, McCluney contends that the trial court erred in denying his motion for new trial. According to McCluney, the People failed to rebut the presumption that the jury misconduct, which involved a juror referring to the dictionary definition of "intent" during deliberations, was prejudicial. We conclude that any presumption of prejudice was sufficiently rebutted in this case. We therefore affirm McCluney's reinstated convictions.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2008, McCluney thought that his neighbor, Brian Goodin, had taken some of McCluney's cocaine. McCluney went to Goodin's house, shot him multiple times, and

beat him with a baseball bat. (*People v. McCluney* (Nov. 2, 2011, D057015) 2011 Cal.App.Unpub. LEXIS 8368 [nonpub. opn.] (*McCluney I*).)[1]

On January 23, 2009, a jury convicted McCluney of assault with a firearm (Pen. Code, § 245, subd. (b); count 2)[2] and possession of cocaine for sale (Health & Saf. Code, § 11351.5; count 4). The jury found true the allegation that in committing the assault in count 2, McCluney personally inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used a firearm (§ 12022.5, subd. (a)). The jury was unable to reach a verdict with respect to count 1, attempted murder, or count 3, assault with a deadly weapon, and the trial court declared a mistrial as to those counts.

The People elected to retry McCluney on counts 1 and 3. On June 26, 2009, a different jury convicted McCluney on count 3, assault with a deadly weapon (§ 245, subd. (a)(1)), and found true the allegation that he personally used a deadly weapon (a baseball bat), within the meaning of section 1192.7, subdivision (c)(23), in the commission of the assault.. The second jury was also unable to reach a verdict on count 1, the attempted murder charge. The court declared a mistrial as to count 1.

The trial court sentenced McCluney to prison for a term of 21 years four months.

McCluney appealed from the judgment of conviction and sentence, arguing, among other things, that the trial court erred in failing to conduct a hearing regarding

---

[1]	The People filed an unopposed request for judicial notice of the record in the prior appeal in this case. We grant the request for judicial notice and refer to the record in the prior appeal, as well as the unpublished opinion issued by the court, when relevant to this appeal.

[2]	Further statutory references are to the Penal Code unless otherwise indicated.

alleged juror misconduct at the first trial, at which he was convicted on counts 2 and 4. This court agreed with McCluney that the trial court should have held a hearing regarding the alleged juror misconduct, vacated McCluney's convictions on counts 2 and 4, and remanded the case to the trial court for it to hold a hearing on McCluney's motions to disclose the contact information for the members of the first jury.

On remand, the trial court held a hearing pursuant to Code of Civil Procedure section 237 and granted McCluney's motion to release the jurors' contact information. Approximately six weeks later, McCluney moved for a new a trial on the basis of juror misconduct.

On July 6, 2012, the trial court held a hearing on McCluney's motion for a new trial. The court denied the motion and reinstated McCluney's convictions on counts 2 and 4. That same day, McCluney filed a notice of appeal.

III.

DISCUSSION

McCluney contends that a juror's misconduct in looking up a dictionary definition of "intent" during deliberations in McCluney's first trial created juror bias. He argues that the trial court erred in denying his new trial motion because, he maintains, the prosecution failed to rebut the presumption of prejudice from juror bias with respect to this incident. We disagree.

A.     *Additional background*

After the jury in the second trial reached its verdict, McCluney requested that the court release contact information for the jurors in the first trial, or set a hearing pursuant

4

to Code of Civil Procedure section 237. McCluney's request was based on evidence discovered by a defense investigator that suggested there may have been juror misconduct during deliberations in the first trial. The investigator said that he had spoken with a juror from the first trial who told the investigator that " 'another juror had looked up "intent" in a dictionary but did not comment on the meaning of the word.' " This juror told the investigator that " '[t]his occurred after the decision on the lesser counts and prior to the jury hanging on the remaining count(s).' " (*McCluney I*, *supra*, at *26.) The trial court denied the motion. (*Ibid*.)

On appeal, this court concluded that the trial court had abused its discretion in not conducting a hearing regarding the alleged juror misconduct. (*McCluney I, supra,* D057015.) We vacated McCluney's convictions on counts 2 and 4 and remanded the case to the trial court for a hearing pursuant to Code of Civil Procedure section 237. (*McCluney I, supra,* at *33.)

On remand, the trial court held a hearing and granted McCluney's request to release the jurors' contact information. McCluney subsequently moved for a new trial, arguing that there had been prejudicial juror misconduct in his first trial.

At a hearing on the motion for a new trial, the court heard testimony from Juror No. 8. Juror No. 8 remembered a discussion in the jury room during deliberations in McCluney's first trial concerning a dictionary. According to Juror No. 8, the jurors had been "going around and around about intent" when one of the other jurors said, " 'The dictionary says—.' " Before that juror said anything more, the other jurors stopped him and told him that he could not discuss what he had read in the dictionary. Juror No. 8

5

said that at the point that the juror in question had mentioned the dictionary, the jury had "already reached a verdict" on the counts on which the jury ultimately was able to reach a verdict (counts 2 and 4). Juror No. 8 could not recall whether anyone had actually brought a dictionary into the jury room. Juror No. 8 did remember, however, that the other jurors immediately told the juror who mentioned the dictionary that they were not permitted to " 'look at anything else' " and that the juror should not reveal anything else concerning what the dictionary said about "intent."

The trial court concluded that although McCluney had established juror misconduct, the People had rebutted any presumption of prejudice resulting from that misconduct. In reaching this conclusion, the court determined that the juror who had consulted the dictionary had not shared with the other jurors any definition that he had found. The court was also satisfied that no dictionary had been taken into the jury room.

B. *Legal standards*

"The trial court is vested with broad discretion to act upon a motion for new trial. [Citation.] When the motion is based upon juror misconduct, the reviewing court should accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence, but must exercise its independent judgment to determine whether any misconduct was prejudicial. [Citations.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 809.)

Use of a dictionary by a juror constitutes misconduct. (*People v. Karis* (1988) 46 Cal.3d 612, 642 (*Karis*).) "Jurors are not allowed to obtain information from outside

6

sources either as to factual matters or for guidance on the law." (*Ibid*.; see also *People v. Barton* (1995) 37 Cal.App.4th 709, 715.)

Juror misconduct involving the receipt of extraneous information that was not part of the evidence received at trial creates a presumption that the defendant was prejudiced by the evidence and may establish juror bias. (*People v. Nesler* (1997) 16 Cal.4th 561, 578 (*Nesler*).) This is because "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it . . . ." (*Smith v. Phillips* (1982) 455 U.S. 209, 217.)

Because juror misconduct gives rise to a presumption of prejudice, the prosecution must rebut the presumption by demonstrating that "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." (*People v. Clair* (1992) 2 Cal.4th 629, 668 (*Clair*); see also *People v. Hardy* (1992) 2 Cal.4th 86, 174 ["The presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm"].)

"We assess prejudice by a review of the entire record. 'The verdict will be set aside only if there appears a substantial likelihood of juror bias. Such bias can appear in two different ways. First, we will find bias if the extraneous material, judged objectively, is inherently and substantially likely to have influenced the juror. [Citations.] Second, we look to the nature of the misconduct and the surrounding circumstances to determine whether it is substantially likely the juror was actually biased against the defendant.

7

[Citation.] The judgment must be set aside if the court finds prejudice under either test.' [Citation.]" (*People v. Tafoya* (2007) 42 Cal.4th. 147, 192.)

"The first of these tests is analogous to the general standard for harmless error analysis under California law." (*In re Carpenter* (1995) 9 Cal.4th 634, 653.) " 'Under this standard, a finding of "inherently" likely bias is required when, but only when, the extraneous information was so prejudicial in context that its erroneous introduction in the trial itself would have warranted reversal of the judgment. Application of this "inherent prejudice" test obviously depends upon a review of the trial record to determine the prejudicial effect of the extraneous information.' [Citation.]" (*People v. Danks* (2004) 32 Cal.4th 269, 303.)

" '[E]ven if the extraneous information was not so prejudicial, in and of itself, as to cause "inherent" bias under the first test,' the nature of the misconduct and the 'totality of the circumstances surrounding the misconduct must still be examined to determine objectively whether a substantial likelihood of actual bias nonetheless arose.' [Citation.] 'Under this second, or "circumstantial" test, the trial record is not a dispositive consideration, but neither is it irrelevant. All pertinent portions of the entire record, including the trial record, must be considered. . . .' [Citation.]" (*Danks*, *supra*, 32 Cal.4th at p. 303.)

C.    *Analysis*

The People concede that the juror's conduct in referring to a dictionary constitutes misconduct. (See *Karis, supra,* 46 Cal.3d at p. 642.) However, the People contend that the trial court correctly determined that any presumption of prejudice from this

misconduct was rebutted because the juror's misconduct related only to the attempted murder charge against McCluney, and the jury did not convict him of that charge.

Because the juror's conduct raises a rebuttable presumption of prejudice, the prosecution had the burden to rebut the presumption by demonstrating that "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment." (*Clair*, *supra*, 2 Cal.4th at p. 668.)

With respect to the first test for determining whether there appears to be a substantial likelihood of juror bias, that test requires that the extraneous information to which the jury was exposed be examined in context. (*Danks*, *supra*, 32 Cal.4th at p. 303.) Here, the trial court found that, at most, a single juror was exposed to the extraneous material. This finding is supported by substantial evidence. That extraneous material—i.e., a dictionary definition of "intent"—was not inherently or substantially likely to have influenced that juror's verdicts on counts 2 and 4—the only counts on which McCluney was convicted by that jury. According to Juror No. 8, by the time another juror mentioned the dictionary definition of "intent," the jury had already reached its verdicts on counts 2 and 4, and jurors were discussing only whether McCluney had the requisite specific intent to be convicted of the attempted murder charge. The jury was ultimately unable to reach a verdict on the attempted murder charge. Given that all members of the jury had already agreed that McCluney was guilty of counts 2 and 4, both of which charged general intent crimes, the fact that a single juror may have looked at a dictionary definition of the word "intent" was not inherently and substantially likely to have influenced the jury's verdicts on counts 2 and 4.

9

Our inquiry does not end with our conclusion that, judged objectively, a juror's reference to the dictionary definition of "intent" was not inherently and substantially likely to have influenced the verdict.  We must also " 'look to the nature of the misconduct and the surrounding circumstances to determine whether it is substantially likely [that any particular] juror was actually biased against the defendant. . . .' [Citation.]"  (*Tafoya*, *supra*, 42 Cal.4th at p. 192, italics added.)  Our review of the record leads us to the conclusion that it is not substantially likely that the juror who obtained an extraneous dictionary definition of "intent" was actually biased against McCluney.  The juror did not bring up this information to the other jurors in a manner that indicated a desire to use the information against McCluney.  Rather, it appears that this juror was simply involved in a misguided effort to determine whether McCluney entertained the required mental state to be convicted on the attempted murder charge.

The fact that the jury found McCluney guilty only on counts 2 and 4, and did not reach verdicts on counts 1 and 3, also indicates that it is not substantially likely that any juror was actually biased against McCluney.  As was made clear in *McCluney I, supra,* D057015, McCluney testified at trial and *essentially admitted* to having engaged in the conduct underlying his convictions on counts 2 and 4.  The fact that the jury in the first trial convicted McCluney of only those two charges, and did not convict him on the remaining counts, demonstrates that the jury deliberated without actual bias against McCluney.

Because "there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment" (*Clair, supra,* 2 Cal.4th at p. 668), there is no

basis for reversing McCluney's convictions on counts 2 and 4 on the ground of juror misconduct.

## IV.

## DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

HALLER, J.